IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-242-FL

WENDY A. HARTWIG,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　)　　　　**MEMORANDUM**
　　　　　　　　　　　　　　　　　　　　)　　**AND RECOMMENDATION**
NANCY A. BERRYHILL,[1]　　　　　　　　)
Acting Commissioner of Social Security,　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　　)

In this action, plaintiff Wendy A. Hartwig ("plaintiff" or, in context, "claimant")

challenges the final decision of defendant Acting Commissioner of Social Security Nancy A.

Berryhill ("Commissioner") denying her application for a period of disability and disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that she is

not disabled.[2] The case is before the court on the parties' motions for judgment on the pleadings.

D.E. 17, 19. Both filed memoranda in support of their respective motions. D.E. 18, 20. Plaintiff

filed a response to the Commissioner's motion. D.E. 21. The motions were referred to the

undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B). *See* 22 & 29 Mar. 2016 Text Ords. For the reasons set forth below, it will be

recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the

final decision of the Commissioner be affirmed.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social
Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action
does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action
is pending. The officer's successor is automatically substituted as a party.").

[2] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same.
The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those
relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I.   BACKGROUND

### A.   Case History

Plaintiff filed applications for DIB and SSI on 9 June 2009 (Transcript of Proceedings ("Tr.") 22, 295-302), alleging a disability onset date of 22 April 2009 (Tr. 295, 299). The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 22, 123, 166. On 9 August 2011, a hearing ("2011 hearing") was held before an administrative law judge ("ALJ") (Augustus C. Martin), at which plaintiff (appearing with a non-attorney representative (Tr. 239)) and a vocational expert testified (Tr. 45-81). The ALJ issued a decision denying plaintiff's claim on 24 August 2011 ("2011 decision"). Tr. 123-32.

Plaintiff requested review by the Appeals Council. Tr. 241-42. On 30 November 2012, the Appeals Council vacated the 2011 decision and remanded the case to an ALJ, with instructions,[3] for the conduct of another hearing and issuance of a new decision. Tr. 140-42.

Pursuant to the remand, a hearing was held on 22 April 2014 before a different ALJ (Carl B. Watson) than the one who presided at the 2011 hearing. Tr. 82-115. Plaintiff, again represented by a non-attorney representative, and a vocational expert different from the one who appeared at the 2011 hearing testified. The ALJ issued a decision denying plaintiff's claims on 8 August 2014. Tr. 22-36. Plaintiff timely requested review by the Appeals Council. Tr. 16-17. On 11 September 2015, the Appeals Council denied the request.[4] Tr. 1.

---

[3] The Appeals Council directed the ALJ to: (1) exhibit and consider new medical evidence; (2) re-evaluate the opinion of Sarah Brownlee, LCSW and the Third Party Function Report of Katherine delaPaz; (3) give further consideration to plaintiff's residual functional capacity ("RFC") and weigh psychiatrist Robert Weinstein, M.D.'s medical opinions giving consideration to his definition of "moderate"; and (4) if warranted, obtain supplemental evidence from a vocational expert. Tr. 140-41.

[4] Plaintiff submitted to the Appeals Council for the first time and it admitted into the record (*see* Tr. 2, 5) the descriptions of three occupations from the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT") apparently including corresponding information from the *Selected Characteristics of Occupations Defined in the Revised DOT*, as presented on LexisAdvance (Tr. 392-409). The Regulations recognize the DOT as a reliable source of job information of which an ALJ may take judicial notice. *See* 20 C.F.R. §§ 404.1566(d)(1),

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 6 November 2015, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

416.966(d)(1); *see also* 20 C.F.R. §§ 404.1569 (stating that medical-vocational guidelines use data from the DOT), 416.969 (same). The court therefore deems these documents to be in the nature of authorities, as opposed to evidence, and thereby not implicating the standard for review applicable when the Appeals Council admits additional evidence into the record. *See Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) ("[T]he court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991))). Nonetheless, the court's review of the ALJ's decision is based on the record as a whole, including the descriptions plaintiff submitted to the Appeals Council.

Case 7:15-cv-00242-FL   Document 22   Filed 02/02/17   Page 3 of 31

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's [RFC], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[5] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[6]

> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[7] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

---

[5] *See also* 20 C.F.R. § 404.1545(a)(1).

[6] *See also* 20 C.F.R. § 404.1545(a)(2).

[7] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C.   ALJ's Findings

Plaintiff was 43 years old on the alleged onset date of disability and 48 years old on the date of the hearing on 22 April 2014. *See, e.g.*, Tr. 35 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 35 ¶ 8) and past relevant work as a stock clerk, cashier, day worker, and insurance agent (Tr. 34 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 25 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: status-post dog bite to the left ring finger with subsequent surgeries and eventual amputation of that finger, degenerative disc disease of the cervical and lumbar spines, depression, and anxiety with post-traumatic stress disorder ("PTSD"). Tr. 25 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 26-28 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[8] except that she cannot climb ladders, ropes, or scaffolds; she can perform frequent handling and occasional fingering with the non-dominant left hand; she has no limitations using the dominant right hand; and she must work in an environment where there is only casual interaction with the general public and where there are no high production demands.

Tr. 28 ¶ 5.

---

[8] *See also* DOT app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform her past relevant work. Tr. 34 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of stock checker, work ticket distributor, and investigator of dealer accounts. Tr. 35-36 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 22 April 2009, through the date of the decision, 8 August 2014. Tr. 36 ¶ 11.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that the ALJ erred in (1) finding her headaches were not a severe impairment; (2) determining her RFC; (3) assessing the opinion of Stephen D. Carpenter, a certified rehabilitation specialist; (4) assessing plaintiff's credibility; and (5) relying on the vocational expert's testimony at step five of the sequential analysis. The court will address each contention in turn.

## IV. ALJ'S SEVERITY ASSESSMENT OF PLAINTIFF'S HEADACHES

### A. Applicable Legal Principles

The Regulations define a nonsevere impairment as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are, of course, the abilities and aptitudes necessary to do most jobs. *Id.* §§ 404.1521(b), 416.921(b). The Fourth Circuit has explained that an "impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis original) (internal quotations marks omitted).

**B.  Analysis**

The ALJ determined at step two that plaintiff's headaches were a nonsevere impairment. Tr. 25 ¶ 3.  He summarized the evidence relating to the headaches as follows:

> Although the claimant suffered a subarachnoid hemorrhage and subdural hematomas with syncope and headaches following a fall in June 2011, the record reveals that these conditions have resolved.  (Exhibit 24F, 31F, 34F, 35F, 40F) Given that there are no residual deficits stemming from the claimant's subarachnoid hemorrhage and subdural hematomas with syncope and headaches, the undersigned finds them to be non-severe impairments.

Tr. 25 ¶ 3.

Plaintiff argues that the evidence shows that her headaches are severe.  However, there is only one mention in the medical records that plaintiff experienced headaches after 30 April 2012. Specifically, on 30 January 2013, it was noted that plaintiff was complaining of neck pain and that "[s]he has cervicogenic headaches."  Tr. 1079.  There is no other evidence in the medical records that plaintiff complained of or suffered from headaches after 30 April 2012, and plaintiff has not identified any such evidence.  Substantial evidence therefore supports the ALJ's determination that plaintiff's headaches resolved.

Furthermore, to satisfy the duration requirement, an impairment must last or be expected to last for a continuous period of 12 months or be expected to result in death.  20 C.F.R. §§ 404.1509, 416.909.  The evidence of record shows that plaintiff received consistent treatment for headaches from only June 2011 to April 2012 and that, as noted, there is only one subsequent reference to headaches in the medical records.  Substantial evidence therefore shows that

plaintiff's headaches are not a severe impairment because of failure to meet the duration requirement.

The court concludes that the ALJ's severity determination is proper. It accordingly rejects plaintiff's challenge to this determination.

## V. ALJ'S ASSESSMENT OF MR. CARPENTER'S OPINIONS

### A. Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length

and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at \*3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at \*1 (21 Apr. 2015); *Napier*, 2013 WL 1856469, at \*2. More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at \*3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at \*2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at \*3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of

disability, including opinions from medical sources about issues reserved to the Commissioner.").

**B.    Analysis**

On 1 December 2011, Mr. Carpenter issued an eight-page report on a rehabilitation evaluation of plaintiff. Tr. 937-44. The report included the review of medical records and administration of eight sets of vocational tests. In the "Summary & Recommendations" section at the end of this report, Mr. Carpenter listed his findings ostensibly based on plaintiff's medical history as follows:

> 1) History of dog bite to the left index finger, requiring multiple surgeries, to include amputation, with continuing pain & functional loss.
> 2) History of subarachnoid hemorrhage, with continuing headaches & dizziness.
> 3) History of rotator cuff impairment in the left shoulder, with continuing pain & functional loss.
> 4) PTSD & Major Depressive Disorder, with ongoing low GAF of 50, and significant mental capacity deficits, to include:
> > a) Impaired concentration.
> > b) Likely decompensation in work settings.
> > c) Likely absences from work.
> > d) Impaired judgment.
> > e) Impaired ability to interact with peers & supervisors.

Tr. 943.

He summarized his findings based on his vocational testing as follows:

> 5) Vocational test findings revealing significant problems to include:
> > a) Deficits in Processing Speed & Psychomotor Speed.
> > b) Concentration & Attention loss.
> > c) Clerical Speed & Coding deficits.
> > d) Inability to sustain gross upper extremity dexterity, fine hand-finger dexterity, gripping, gross handling, pinching & related tasks.
> > e) High levels of pain.
> > f) Poor tolerance for frustration & stress.
> > g) Deficits in upper extremity function related to vocational function.
> > h) Inability to meet the stress & pressures of a normal or low stress work situation.
> > i) Inability to interact with peers & supervisors in work settings.

j) Inability to meet work pace, persistence & performance in work settings.

Tr. 944.

Mr. Carpenter concluded that "[b]ased on the medical & vocational findings presented, Ms. Hartwig is unable to sustain competitive work tasks on a competitive basis." Tr. 944; *see also* Tr. 943 ("Ms. Hartwig has multiple medical & vocational problems that will preclude her from competitive employment . . . .").

The ALJ provided the following analysis of Mr. Carpenter's evaluation:

In December 2011, Stephen Carpenter, a certified rehabilitation counselor, performed a vocational evaluation on the claimant. Based on his vocational findings and the medical records available to him, Mr. Carpenter determined that the claimant was unable to sustain competitive work tasks on a competitive basis. (Exhibit 32F) The undersigned has considered the assessment of Mr. Carpenter; however, based on the evidence of record as discussed above, the undersigned finds that the claimant is able to sustain competitive employment with the limitations as assessed in the [RFC] above. Moreover, the undersigned notes that the determination of whether an individual is disabled is reserved to the Commissioner pursuant to Section 404.1467. As such, the undersigned accords the assessment of Mr. Carpenter little weight.

Tr. 33-34 ¶ 5.

Plaintiff argues that the ALJ erred, in part, by purportedly addressing only Mr. Carpenter's conclusion that plaintiff is unable to perform competitive work and that his allocation of little weight related solely to this conclusion. A reasonable reading of the ALJ's findings belies this contention. The ALJ stated that he considered "the assessment of Mr. Carpenter" and that he "accords the assessment of Mr. Carpenter little weight." Tr. 34 ¶ 5. "Assessment" is reasonably read as referring to Mr. Carpenter's evaluation as a whole.

Even if "assessment" is read as signifying solely Mr. Carpenter's conclusion, that conclusion is a comprehensive one. Attribution of little weight to the conclusion would logically signify attribution of little weight to the determinations supporting it. Indeed, attribution of

significant weight to the underlying findings would be incompatible with attribution of little weight to the conclusion they support.

In any event, the ALJ stated that he was discounting Mr. Carpenter's assessment "based on the evidence of record as discussed above," essentially incorporating by reference that discussion into his evaluation of Mr. Carpenter's assessment. Tr. 34 ¶ 5. That discussion dealt extensively with the evidence of record and included the ALJ's assessment of the evidence. By his reliance on his prior broad discussion of the evidence, the ALJ was addressing comprehensively Mr. Carpenter's assessment. Notably, virtually all, if not all, of the medical records reviewed by Mr. Carpenter appear to be included in the evidence before the ALJ.[9] Thus, it is apparent from the ALJ's incorporated review of this other evidence that he was according Mr. Carpenter's assessment as a whole—both his conclusion and the findings underlying it— little weight.

Plaintiff argues that the ALJ failed to address specifically Mr. Carpenter's findings regarding various mental deficits, namely, deficits in processing and psychomotor speed; memory, attention, and concentration; stress tolerance; pace, persistence, and performance

---

[9] As identified in his report, the medical records reviewed by Mr. Carpenter, with bracketed page citations to the exhibits in the record before the ALJ in which such records appear to be located, were:

> 1) Wilmington Health Associates, records 06/16/2011 [Tr. 807-10].
> 2) Wilmington Orthopedic Group, records 01/04/2011 to 06/15/2011 [Tr. 758-69, 782-90].
> 3) Atlantic Neurosurgical & Spine Specialists, PA, records 07/05/2011 to 07/14/2011 [Tr. 791-93].
> 4) Sarah Brownlee, LCSW, Therapist, records 06/15/2010 to 08/01/2011 [Tr. 747-57, 770-76, 866-74].
> 5) New Hanover Regional Medical Center, records 06/11/2011 to 07/25/2011 [Tr. 794-99].
> 6) Wake Forest University Baptist Medical Center, records 04/29/2009 to 06/10/2010 [Tr. 444-90, 527-34, 622-24, 656-730].

Tr. 939.

demands; and interacting with peers and supervisors.[10] Pl.'s Mem. 22-23. The ALJ, though, addressed limitations in these areas in his discussion of the evidence elsewhere which, again, he incorporated by reference into his analysis of Mr. Carpenter's evaluation.

For example, the ALJ discussed such limitations in his application of the psychiatric review technique (*see* 20 C.F.R. §§ 404.1520a, 416.920a), or so-called "paragraph B" criteria, at step two of the sequential analysis. Tr. 26-27 ¶ 4. He stated:

> In activities of daily living, the claimant has moderate restriction. In August 2009, it was reported that the claimant had some problems with her personal care due to her physical condition. It was reported that the claimant was able to prepare simple meals, do laundry and perform light cleaning, such as loading the dishwasher and wiping counters. Moreover, it was reported that the claimant was able to drive. (Exhibit 3E) The claimant reported in November 2013, that she was caring for a disabled friend. (Exhibit 41F) At the hearing, the claimant testified that she lived alone. She said that she was able to perform some chores (laundry, sweeping, vacuuming) in her own way. The claimant related that she was also able to drive at times and grocery shop.
>
> In social functioning, the claimant has moderate difficulties given reports that she does not like to be around people. However, in August 2009, it was reported that the claimant was able to shop, spend time with others, and spend time outside. (Exhibit 3E) In June 2011, the claimant reported that she assisted a friend who fostered puppies. (Exhibit 30F) Notably, in November 2013, the claimant reported that she was living with a disabled friend, for who she was caring, in return for room and board. (Exhibit 41F)
>
> With regard to concentration, persistence or pace, the claimant has mild difficulties. In August 2009, it was reported that the claimant read and watched television all the time and that she was able to drive, activities, which, by their very nature, requires sustained attention and attention to detail. (Exhibit 3E) Upon examinations, the claimant was consistently alert and oriented with a logical/goal-directed thought process and her memory, attention, concentration, judgment and insight were intact. (Exhibit 3F, 6F, 19F, 30F, 33F, 35F, 36F, 39F, 41F) Moreover, the claimant gave a coherent medical history during her hearing.
>
> As for episodes of decompensation, the claimant has experienced no episodes of

---

[10] The specific findings plaintiff cites are not those set out in Mr. Carpenter's "Summary & Recommendations," notwithstanding plaintiff's citation to one of the pages on which the "Summary and Recommendations" is located (Tr. 944), but appear to be taken from the "Vocation Impact" section discussing the findings from one of the sets of vocational tests he administered. Tr. 940. It is not entirely clear whether the findings cited in this section reflect simply a recitation of the test results or Mr. Carpenter's conclusions based on them.

decompensation, which have been of extended duration.

Tr. 26-27 ¶ 4. Substantial evidence supports the ALJ's analysis, including the evidence he cites.

The ALJ also discussed mental limitations of the type addressed by Mr. Carpenter and cited by plaintiff in his overall review of plaintiff's severe mental impairments:

> The undersigned further finds that the claimant suffers from depression and anxiety with posttraumatic stress disorder, which are severe impairments expected to cause some limitations, but do not entirely preclude work. The medical evidence of record reveals that the claimant received treatment for these conditions from Daymark Recovery Services (June 2009 to September 2009), Delta Behavioral Health (May 2010 to January 2013), Rocky Point Medical Center (July 2013 to November 2013) and Crystal River Psychiatric Group (February 2013 to November 2013). These records reveal that the claimant's symptoms of depression and anxiety with post-traumatic stress disorder improved with prescribed medications and therapy and her condition was generally described as stable. The claimant was consistently alert and oriented with a logical/goal-directed thought process and her memory, attention, concentration, judgment and insight were intact. While the claimant had a depressed/sad mood on occasion, it was otherwise described as euthymic. She routinely denied suicidal/homicidal ideations, auditory/visual hallucinations and delusions. (Exhibit 3F, 6F, 19F, 30F, 33F, 39F, 41F) It is significant to note that when seen at New Hanover Community Health Center from August 2011 to December 2012, the claimant routinely denied depression and anxiety. (Exhibit 34F) When seen at Wilmington Health Associates and Atlantic Neurosurgical and Spine Specialist for unrelated illnesses, the claimant was generally oriented with an appropriate mood, normal affect, normal speech and normal cognition. (Exhibit 24F, 28F, 35F, 36F) Nevertheless, based upon the evidence of record as a whole, the undersigned has limited the claimant to light work activity in an environment where there is only casual interaction with the general public and where there are no high production demands. The undersigned finds these limitations adequately accommodate her mental conditions.

Tr. 31-32 ¶ 5. Substantial evidence supports this evaluation of plaintiff's mental impairments, including the evidence he cites.

The ALJ's reliance specifically on evidence that plaintiff's symptoms improved with medication was proper. It is, of course, well settled that if a symptom can be reasonably controlled by treatment, including medication, it is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ again expressed his assessment of the mental limitations addressed by Mr. Carpenter and pointed to by plaintiff in discounting to varying degrees the opinions of treating psychiatrist Dr. Weinstein, issued 14 March 2011 (Tr. 32 ¶ 5 (referencing Tr. 773-76)); treating social worker LCSW Brownlee, issued 1 August 2011 (Tr. 33 ¶ 5 (referencing Tr. 801-02)); and treating general practitioner Daniel Zinicola, M.D., issued 22 May 2014 (Tr. 33 ¶ 5 (referencing Tr. 1331-32)). He also addressed these limitations in discounting the global assessment of functioning ("GAF") scores assigned to plaintiff. Tr. 32-33 ¶ 5. Notably, plaintiff does not challenge the ALJ's assessment of this opinion evidence or the GAF scores. Substantial evidence supports these assessments by the ALJ, including the evidence he cites.

Mr. Carpenter also, as indicated, expressed opinions relating to plaintiff's dexterity as limited by the impairment to her left hand. Plaintiff contends that the ALJ failed to adequately evaluate these opinions. As with plaintiff's mental impairments, however, the ALJ did address her left-hand impairment and incorporated such discussion by reference into his analysis of Mr. Carpenter's opinions as part of "the evidence of record as discussed above." Tr. 34 ¶ 5.

The ALJ's principal discussion of plaintiff's left-hand impairment and the limitations it imposes reads:

> The undersigned finds that the claimant suffers from a left upper extremity impairment, which is a severe impairment, but not to the extent of being disabling. The medical evidence of record reveals that the claimant suffered a proximal ring finger fracture of the left hand with extensor tendon injury during an altercation with a dog on April 22, 2009, which required numerous surgeries. In April 2009, she underwent open reduction and internal fixation of the fracture and repair of the tendon. Due to malunion and malalignment of the ring finger, she underwent osteotomy of the left ring finger with bone grafting and placement of a dorsal plate in July 2009. As there was some exposure of the plate, the plate was removed in October 2009. In November 2009, there was again malunion and the claimant required debridement of the bone with bone shortening and percutaneous pinning. Subsequent to this surgery, the claimant was doing quite well overall and x-ray in April 2010 revealed that the fracture was in good position and her bone stock was reasonably good. In June 2010, the claimant

refractured her finger and she underwent open reduction and internal fixation with extensive debridement of bone. In July 2010, she had reasonable reduction of the fracture. Due to persistent pain and chronic nonunion, the claimant underwent ray amputation of the left ring finger on January 4, 2011. Subsequently, on January 19, 2011, she had stiffness with flexion of the long and small fingers of the left hand. In February 2011, the incision was well healed and neurovascular examination was intact in all digits. In March 2011, the claimant's fingers looked good, but they were stiff In May 2011, she had slightly improved stiffness. In June 2011, she complained of left shoulder pain and examination revealed no swelling of the shoulder, no AC joint tenderness and she had forward flexion to 160 degrees. The diagnosis was "possible" rotator cuff tendonitis, for which she received an injection. In September 2011, examination revealed normal (5/5) motor strength in the right upper extremity and 3+/5 in the left upper extremity. In October 2011, the claimant complained of left hand numbness. A nerve conduction study revealed mild carpal tunnel syndrome and in November 2011, the claimant underwent left hand carpal tunnel surgery. In February 2012, records from Ortho Wilmington revealed that the claimant was doing quite well from the standpoint of her carpal tunnel release. She had regained good range of motion of her digits. In February 2012, she had reduced (4/5) muscle strength in the left upper extremity. In March 2012, the claimant underwent left ulnar nerve transposition at the elbow. In July 2012, although she complained of burning pain in her left hand, there was full wrist flexion and extension, full forearm pronation and supination and full elbow flexion and extension. In August 2012, it was reported that the amputation of the claimant's left ring finger was largely a success but she continued to have pain in the left hand. She was found to have normal (5/5) motor strength of her right upper extremity. In October 2012, an Electrodiagnostic study of the claimant's left hand was normal without any evidence of ulnar neuropathy. (Exhibit 1F, 2F, 4F, 9F, 10F, 16F, 17F, 18F, 20F, 23F, 34F, 36F) Nevertheless, the claimant has experienced a severe injury to her left ring finger that ultimately resulted in amputation and she has experienced some limitations to her left upper extremity. As such, the undersigned finds that the claimant is capable of light work activity with no climbing of ladders, ropes and scaffolds and no more than frequent handling and occasional fingering with the non-dominant left hand. These limitations adequately take into account the physical limitations caused by the claimant's left hand injury. The undersigned notes that the claimant has no limitations using her dominant right hand.

Tr. 30-31 ¶ 5. Substantial evidence supports the ALJ's evaluation of plaintiff's left-hand impairment, including the evidence he cites.

Among the other evidence supporting the ALJ's assessments of plaintiff's mental and left-hand limitations as discussed by Mr. Carpenter and cited by plaintiff are the evaluations of

plaintiff by the nonexamining state agency consultants. As reviewed by the ALJ, these evaluations found as follows:

> Disability Determination Service (DDS) medical consultants also reviewed the medical evidence of record pertaining to the claimant's functional limitations. They found that the claimant was limited to medium work activity with frequent, but not constant, fingering with the left upper extremity. (Exhibit 11F) The undersigned gives significant weight to this DDS opinion as it concludes that the claimant is not disabled. However, the undersigned has reduced the residual functional capacity exertional level to light given the combination of the claimant's physical impairments. The undersigned further limits the claimant's use of [her] non-dominate left hand to occasional fingering and frequent handling, based on the evidence of record and the claimant's testimony.

> The DDS consultants further determined that the claimant's mental impairments were severe and resulted in mild limitations in activities of daily living, moderate limitations in social functioning and moderate limitations in maintaining concentration, persistence or pace. (Exhibit 7F, 8F, l2F, 13F) The undersigned some weight to this opinion; however, for the reasons discussed in detail above, the undersigned finds that the claimant has moderate limitations in activities of daily living and mild limitations in concentration, persistence or pace, as the record supports it.

Tr. 34 ¶ 5.

In support of her argument that the ALJ inadequately discussed Mr. Carpenter's opinions, plaintiff cites evidence that she alleges is supportive of Mr. Carpenter's opinions. The presence of such evidence in the record, though, does not establish error by the ALJ. Indeed, it is the ALJ's job to weigh conflicting evidence. To the extent that plaintiff is asking the court to reweigh the evidence, the court notes that it may not properly do so.

Plaintiff also appears to argue that the ALJ should have discussed each of Mr. Carpenter's findings. *See* Pl.'s Mem. 24 ("Mr. Carpenter's findings should have been individually assessed . . . ."). But there is no blanket requirement that an ALJ discuss each opinion from a single source separately. *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at \*2 "Adjudicators must use judgment based on the facts of each case in determining whether, and the

extent to which, it is necessary to address separately each medical opinion from a single source."
*Id.* The court finds that the ALJ exercised his judgment in this regard appropriately with respect
to Mr. Carpenter's opinions. Aside from any other considerations, discussion of each finding by
Mr. Carpenter separately would have been impracticable given the number of findings he made
in his lengthy report.

While discounting Mr. Carpenter's opinions, the ALJ did not disregard them (or other
evidence of plaintiff's mental and left-hand limitations) entirely, as the foregoing discussion
indicates. They are reflected ultimately in the limitations the ALJ included in his RFC
determination. *See* Tr. 28 ¶ 5.

The court concludes that the ALJ's assessment of the opinions of Mr. Carpenter is based
on proper legal standards and supported by substantial evidence of record. The court
accordingly rejects plaintiff's challenge to it.

## VI.    ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.    Applicable Legal Principles

The ALJ's assessment involves a two-step process. First, the ALJ must determine
whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms.
*Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those
symptoms. *Id.* The ALJ's "'decision must contain specific reasons for the finding on credibility,
supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906
(D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[11]

In assessing a claimant's credibility, the ALJ must consider "all of the available
evidence." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The evidence that should be considered

---

[11] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 8 August 2014.

includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3).

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at \*2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

**B.  Analysis**

In her testimony, plaintiff alleged that she was disabled. The ALJ summarized her testimony at length in his decision:

At the hearing, the claimant testified that she suffered a dog bite to two of her fingers on her left hand. She reported that the doctors tried to save both her fingers, noting the little finger was good, but the middle finger required 12 to 13 surgeries before she asked that it be amputated. She noted that this occurred over the course of three and one-half years. The claimant stated that she was right-hand dominant. She related that she was not supposed to pick up over ten pounds due to a recent surgery. She reported that she feels like she is getting carpal tunnel because she uses her right hand all the time, but has not talked to her

doctors about this problem. The claimant said that [she] was unable to grasp things with her left hand. She noted that she could pick up things with the index finger and thumb of her left hand, but was unable to hold a glass. She related that she was able to use a computer well with one hand. The claimant stated that she has been going through depression and post-traumatic stress. She said that she was in therapy with Sarah Brownlee, as well as seeing a psychiatrist. The claimant said that she has to find a new mental health therapist since Medicaid has been switched. The claimant reported that she started having bowel problems about the time her insurance coverage was changed. She stated that she was in the hospital for about three months due to stomach issues. The claimant reported that when her small intestine was taken out, her weight went down to below 115 pounds and she was malnourished. She said that the doctors prescribed her Marinol in an effort to increase her appetite. She said that she was unable to get out and do anything due to the ongoing healing process from the surgery. The claimant related that she fell down a steep flight of wooden stairs (fourteen feet) on to her head and had three hemorrhages on her brain, which have disappeared. She reported that she also hurt her neck and back, which was treated by Atlantic Orthopedics. She noted that since the fall, she has had horrible headaches, short-term memory problems, and blackout spells from standing up too quick. She said that her personal doctor has scheduled her for some testing to find out what is going on with her. The claimant related that she has developed a phobia and was afraid to leave her house. She said that she does not go anywhere by herself anymore. The claimant reported that she looks out the window waiting for the next bad thing to happen. She stated that she was afraid if she goes outside, another dog would attack her. The claimant related that she had problems sleeping at night because she gets up every two hours to use the bathroom. She said that she has taken a three-hour nap in the morning and a three to four hour nap in the evening for many years.

The claimant testified that she currently lives alone. She stated that she has a driver's license and is able to drive some, but mostly relies on other people to take her places. The claimant reported that she was able to do chores in her own way. She said that she puts her dirty clothes in a laundry basket that she leaves by the washer because she cannot pick up the basket. The claimant related that she sweeps the floor with one hand. She reported that she can vacuum but it was a slow process, because it fatigues her after doing just one room. She said that she was unable to garden and plant things like before. The claimant stated that she was able to grocery shop. She reported that on a typical day, she takes her medicines, eats, takes a nap, gets up, take her medicine again and tries to watch television but can never concentrate because her mind races on everything that she used to do. She said that she was unable to concentrate to read a book.

Tr. 28-29 ¶ 5.

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 29 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 29 ¶ 5. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 29 ¶ 5.

The ALJ explained his credibility determination as follows:

Although the claimant testified to having carpal tunnel syndrome in her right upper extremity, she has not mentioned this condition to her physician, which suggests that it may have not been as serious as she has alleged. While the claimant has reported significant mental impairments, she has not required any psychiatric hospitalizations.

Despite the allegations of severe functional limitations, the evidence reveals that the claimant was able to engage in various forms of activities, to some extent, since her alleged onset date. As mentioned previously, she was able to attend to her personal care, although with some physical difficulty. She was able to prepare simple meals, do laundry and perform light cleaning, such as loading the dishwasher and wiping counters. She testified that she could sweep, vacuum and do laundry in her own way. The claimant was able to shop, spend time with others, and spend time outside. She reported that she was able to read and watch television. She cared for a disabled friend. She assisted a friend show fostered puppies. (Exhibit 3E, 30F) Such activity is inconsistent with allegations of total disability.

Tr. 29-30 ¶ 5.

Plaintiff challenges the ALJ's credibility determination by asserting that the "ALJ's reasons for finding [her] less than fully credible appear to be contrived and insignificant." Pl.'s Mem. 24. As to her alleged carpal tunnel syndrome, plaintiff contends that she had not yet had the opportunity to address it with her doctor because she was dealing with other ongoing medical conditions and that she spent a majority of the hearing testifying regarding her left hand. The court finds, though, that the ALJ appropriately considered that plaintiff had not mentioned

complaints to her doctor regarding carpal tunnel symptoms in her right hand. The record shows that plaintiff had over two months after being released from the hospital and before the hearing to address these symptoms with her provider. *See* Tr. 1320.

With respect to plaintiff's mental impairments, plaintiff argues that the absence of any psychiatric hospitalizations does not bear on her credibility. But the Regulations expressly recognize treatment as a proper factor to be considered in the credibility analysis. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Given the level of mental limitation plaintiff claims, the absence of hospitalization is relevant to her credibility.

The ALJ's evaluation of the evidence regarding plaintiff's mental impairments, as discussed above in the analysis of the ALJ's assessment of Mr. Carpenter's opinions, otherwise supports his determination that these impairments are not as limiting as plaintiff alleges. *See*, *e.g.*, Tr. 31-32 ¶ 5.

As to plaintiff's activities, she argues that the ALJ mischaracterized her testimony by stating that she could sweep and vacuum, shop and spend time outside, and read. As to sweeping and vacuuming, however, the ALJ specified that she testified that she could do these activities "in her own way." Tr. 30 ¶ 5. This accommodates plaintiff's objection that the ALJ did not account for her testimony that she could sweep with only one hand (Tr. 97) and that vacuuming one room exhausted her (Tr. 98).

The finding that plaintiff was able to shop and spend time outside was not based on her testimony and the ALJ does not state that it was. Tr. 30 ¶ 5. Rather, it is based on the 15 August 2009 third-party report of one of plaintiff's friends, Katherine delaPaz (Tr. 340-47 (Ex. 3E)). The ALJ cites to this exhibit in his credibility determination. *See* Tr. 30 ¶ 5. Moreover, as the ALJ alludes to in his credibility determination, he had discussed plaintiff's activities as part of

his step three listing analysis. *See* Tr. 29 ¶ 5 ("As previously discussed . . . ."). There, he stated that "in August 2009, it was reported that the claimant was able to shop, spend time with others, and spend time outside. (Exhibit 3E)." Tr. 26-27 ¶ 4 (apparently referring to Tr. 344 nos. 17, 18, 21).

With respect to reading, the ALJ, again, does not say that plaintiff testified that she could do so, but instead that she "reported" she could. Tr. 30 ¶ 5. In his summary of plaintiff's testimony, the ALJ accurately stated that she testified that she could no longer read, as indicated above. Tr. 29 ¶ 5 (referring to Tr. 65, 66). The report of the ability to read to which the ALJ alludes is apparently that made by Ms. delaPaz in her 2009 third-party report, which the ALJ referenced earlier in his decision. *See* Tr. 27 ¶ 4 ("In August 2009, it was reported that the claimant read and watched television all the time . . . ."). In this portion of her report, Ms. delaPaz stated, "[s]he reads & watches TV all the time[] as her activities are limited." Tr. 344 no. 20.b. The court does not deem the apparently erroneous attribution of this report to plaintiff reversible error because it is the substance of the report, not its source, that is the focus of the ALJ's analysis.

Lastly, plaintiff argues that the ability to do several household chores, done at her own pace on an intermittent basis and in her own way, is too insignificant to be probative of plaintiff's ability to engage in work on a regular and continuing basis as required for full-time work. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996) (discussing the capacity to work on a regular and continuing basis). While it is true that, standing alone, these activities do not show the capacity to work, they do shed at least some light on such capacity. The Regulations expressly permit consideration of such activities in assessing a claimant's

credibility. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 404.1529(c)(3)(i). As discussed, of course, the ALJ based his assessment of plaintiff's credibility on other factors as well.

Just as the ALJ's evaluation of the medical evidence regarding plaintiff's mental impairments supports his determination regarding plaintiff's credibility with respect to these impairments, his extensive evaluation of the medical evidence regarding plaintiff's left-hand impairment (*see*, *e.g.*, Tr. 30-31 ¶ 5) supports his determination regarding her credibility with respect to these impairments. As discussed above, substantial evidence supports the ALJ's evaluation of plaintiff's left-hand impairment.

The court concludes that the ALJ's credibility assessment is supported by substantial evidence of record and free of reversible error. The court accordingly rejects plaintiff's challenge to it.

## VII. ALJ'S ASSESSMENT OF PLAINTIFF'S RFC

A claimant's RFC "represents the most that an individual can do despite his or her limitations or restrictions." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4. Plaintiff argues that the ALJ erred by not including all of her limitations in his RFC determination and thereby overstating her RFC, and that the RFC is not supported by substantial evidence. The contention is meritless.

The court has previously reviewed and found supported by substantial evidence the ALJ's assessment of evidence relating to plaintiff's mental and left-hand impairments. As indicated, the ALJ expressly accommodated in his RFC determination the limitations he found plaintiff to have as a result of these impairments. Again, he stated in relevant part:

> The undersigned further finds that the claimant suffers from depression and anxiety with post-traumatic stress disorder, which are severe impairments expected to cause some limitations, but do not entirely preclude work. . . . Nevertheless, based upon the evidence of record as a whole, the undersigned has

26

limited the claimant to light work activity in an environment where there is only casual interaction with the general public and where there are no high production demands. The undersigned finds these limitations adequately accommodate her mental conditions.

. . . .

The undersigned finds that the claimant suffers from a left upper extremity impairment, which is a severe impairment, but not to the extent of being disabling. . . . Nevertheless, the claimant has experienced a severe injury to her left ring finger that ultimately resulted in amputation and she has experienced some limitations to her left upper extremity. As such, the undersigned finds that the claimant is capable of light work activity with no climbing of ladders, ropes and scaffolds and no more than frequent handling and occasional fingering with the non-dominant left hand. These limitations adequately take into account the physical limitations caused by the claimant's left hand injury. The undersigned notes that the claimant has no limitations using her dominant right hand.

Tr. 31-32 ¶ 5; 30-31 ¶ 5.

The ALJ provided a comparable evaluation of the evidence relating to plaintiff's spinal impairments, including express accommodation in his RFC determination of the limitations he found plaintiff to have as a result of these impairments. He stated:

The undersigned finds that the claimant suffers from degenerative disc disease of the cervical and lumbar spines, which is a severe impairment, but not to the extent of being disabling. The claimant received care from New Hanover Community Health Center (August 2011 to December 2012), Wilmington Health Associates (August 2011 to January 2013) and Ortho Wilmington (October 2011 to May 2013) for complaints of neck and back pain following a fall in June 2011. A CT scan of the cervical spine in June 2011 was negative for instability. Examination revealed that the claimant had excellent range of motion on flexion and extension, was neurologically intact and had no paresthesias or numbness in any of her extremities. In September 2011, an MRI of the cervical spine was mildly abnormal due to straightening of the usual curve and normal posterior disc protrusions at C3-4, C4-5, C5-6, and C6-7. There was no evidence of neural compromise. In October 2011, an MRI of the lumbar spine was abnormal due to straightening of the usual lordosis and degenerative disc disease at L5-Sl with mild posterior disc protrusions at L2-3, L3-4, L4-5 and L5-Sl but no evidence of neural compromise. The claimant's neck and back pain was treated with various prescribed medications, nerve blocks and epidural steroid injections. The claimant was found to have decreased cervical range of motion and mild cervical tenderness on occasion, and limited strength[1] and range of motion of the left hand. Otherwise, examinations generally revealed a normal gait and stance, normal muscle strength in the upper and lower extremities (except as noted above),

normal bulk and tone, normal range of motion at the cervical and lumbar spine, intact sensation, and no joint edema or swelling. (Exhibit 31F/15, 16, 34F, 35F, 36F) Nevertheless, the claimant has required some treatment and has experienced some limitations. As such, the undersigned has limited the claimant to light work activity with no climbing of ladders, ropes and scaffolds. These limitations adequately take into account the physical limitations caused by the claimant's degenerative disc disease.

. . . .

---

[1] The claimant was found to have 3+/5 motor strength in the left deltoid in September 2011 and 4/5 reduced muscle strength in the left upper extremity in February 2012.

Tr. 31 ¶ 5. This evaluation by the ALJ, like the others, is supported by substantial evidence, including the evidence he cites, as well as the assessments of the nonexamining state agency consultants, previously discussed.

Plaintiff's contention that she is subject to additional limitations beyond those found by the ALJ amounts to an invitation to the court to reweigh the evidence. Again, it is not the court's role to do so. For this and the other reasons set out, the court rejects plaintiff's challenge to the ALJ's RFC determination.

## VIII. ALJ'S RELIANCE ON THE VOCATIONAL EXPERT'S TESTIMONY

A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). Plaintiff argues, in part, that the hypothetical the ALJ posed to the vocational expert that elicited the testimony on which the ALJ relied at step five of his analysis did not reflect all of her limitations and that the ALJ therefore could not properly rely on it.

Here, the hypothetical in question did contain each of the limitations included in the ALJ's RFC determination. *See* Tr. 110-12. For the reasons discussed, the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. The ALJ's hypothetical to the vocational expert was accordingly proper, and the court rejects plaintiff's challenge to it.

Plaintiff also challenges the ALJ's reliance on the vocational expert's testimony on the grounds that the occupation of stock checker (DOT no. 299.667-014),[12] which the vocational expert found plaintiff able to perform, requires more capacity than provided for in the ALJ's RFC determination—namely, frequent, rather than occasional fingering with the nondominant left upper extremity. The DOT, though, does not specify whether the fingering demand applies to just one arm or both. Courts have held that an ALJ may appropriately rely on a vocational expert's testimony regarding whether a claimant limited to occasional fingering with one hand can perform an occupation that requires frequent fingering. *See*, *e.g.*, *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (concluding that the ALJ may rely on the vocational expert's testimony that plaintiff could perform jobs requiring the ability to finger and handle with the use of only one arm and one hand); *Lane v. Astrue*, No. EDCV 11-939(OP), 2012 WL 94567, at *3 (C.D. Cal. 11 Jan. 2012) (concluding that the ALJ did not err in relying on the vocational expert's testimony that plaintiff could perform jobs requiring frequent fine and gross manipulation where one hand was limited to only occasional manipulation); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa 2005) (determining that the ALJ did not err in relying on the vocational expert's testimony that plaintiff could perform jobs requiring "frequent or constant reaching and handling and in some cases fingering" where his right hand was limited to occasional use).

Plaintiff further argues that another occupation identified by the vocational expert, work ticket distributor, does not exist in the DOT. It does, though, and the DOT number provided by the vocational expert for it was correct, DOT no. 221.667-010, 1991 WL 672062.

Even if the stock checker and work ticket distributor occupations were disregarded, the remaining occupation identified by the ALJ as one plaintiff could perform, investigator of dealer

---

[12] The ALJ erroneously states the DOT number as 299.667-010. *See* Tr. 35 ¶ 10. The vocational expert used the correct number in her testimony. *See* Tr. 111.

accounts, would be sufficient to satisfy step five of the sequential analysis. The vocational expert testified and the ALJ found that there are 272,000 jobs in that occupation nationally and 3,000 in North Carolina. Tr. 35 ¶ 5; 112. The Fourth Circuit has held that a far lower number of jobs is significant for purposes of determining whether there is other work available to a claimant at step five of the sequential analysis. *See*, *e.g.*, *Hodges v. Apfel*, 203 F.3d 820 (Table), at *1 (4th Cir. 2000) (153 jobs); *Hyatt v. Apfel*, 153 F.3d 720 (Table), at *3 (4th Cir. 1998) (650 jobs); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs).

Plaintiff's challenge to the ALJ's reliance on the vocational expert's testimony is therefore meritless. The court therefore rejects this final challenge to the ALJ's decision.

## IX. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and contains no reversible error. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 19) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 17) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 16 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 2nd day of February 2017.

James E. Gates
United States Magistrate Judge